IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


| STEVEN T. HIGGINS, | ) | |
|---|---|---|
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No.10-193-KI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |


KING, District Judge:

Plaintiff Steven Higgins ("Higgins") seeks judicial review of the Social Security Commissioner's decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.


1 - OPINION AND ORDER

## BACKGROUND

Born in 1948, Higgins presently alleges disability beginning December 31, 2001.  Tr. 398, 740.[1]  Higgins first applied for DIB on March 24, 1997 (Tr. 137-39), alleging disability due to two cervical surgeries and a hernia.  Tr. 146.  The Commissioner denied this application initially and upon reconsideration, and Higgins, who was not represented by counsel, received hearings before an Administrative Law Judge ("ALJ") on January 15, 1999 and August 6, 1999.  Tr. 47-72.  On September 9, 1999, the ALJ found Higgins not disabled.  Tr. 336-42.

The Appeals Council remanded this decision back to the ALJ on September 8, 2000.  Tr. 354-56.  A second ALJ found again found Higgins not disabled on April 27, 2000.  Tr. 19-31.

A third hearing was held before an ALJ on April 4, 2001.  Tr. 73-112, and a fourth hearing was held on September 5, 2005.  Tr. 776-800.[2]  An ALJ found Higgins not disabled on December 8, 2005.  Tr. 416-27.  Higgins appealed that decision to the Appeals Council, and subsequently this court, and this court remanded the matter for further proceedings on June 14, 2008.  Tr. 432-34.

An ALJ held a final hearing in this matter on June 17, 2009.  Tr. 137-75.  On November 2, 2009, an ALJ found Higgins disabled as of his fifty-fifth birthday, on January 27, 2003, but not disabled prior to that date.  Tr. 405-08.  Higgins presently appeals the ALJ's decision pertaining to

---

[1]Citations "Tr." refer to the indicated pages of the transcript of the Administrative Record, filed by the Commissioner on April 20, 2010.  Docket #10.

[2]This court discovered that the September 5, 2005, hearing transcript was missing from the Administrative Record filed by the Commissioner, and ordered the Commissioner to produce it.  Docket #25.  The Commissioner filed a supplemental transcript on May 5, 2011, which was again incomplete.  Docket #29.  The Commissioner filed a second supplemental transcript on May 16, 2011.  Docket #30.

the period between his December 31, 2001, alleged onset date and the January 27, 2003, date that

his disability began.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps

in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520; 416.920; *Bowen v.*

*Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(I); 416.920(a)(4)(I).  At step two,

the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1509;

404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).  If the claimant does not have such a severe

impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an

impairment "listed" in the Commissioner's regulations.  20 C.F.R. §§ 404.1520(a)(4)(iii);

416.920(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is

disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's

RFC is an assessment of work-related activities the claimant may still perform on a regular and

continuing basis, despite limitations imposed by his impairments.  20 C.F.R. §§ 404.1520(e);

416.920(e) Social Security Ruling ("SSR") 96-8p (available at 1996 WL 374184).

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform her past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g).

The Commissioner's deviation from a district court's remand order is reversible error. *Sullivan v. Hudson*, 490 U.S. 877, 885-886 (1989).

## THE ALJ'S FINDINGS

The ALJ's November 2, 2009, decision found that Higgins met insured status requirements through December 31, 2001, and found that he had not engaged in substantial gainful activity since his December 31, 2001, alleged onset date. Tr. 400. The ALJ found Higgins's degenerative arthritis

of the cervical and lumbar spine "severe," as well as his bilateral degenerative arthritis and bursitis of the hips.  Tr. 401.  The ALJ found that Higgins did not meet or equal a listing under the Commissioner's regulations.  *Id.*  The ALJ subsequently found Higgins's symptom testimony "not credible," (Tr. 403) and concluded that he retained the RFC to perform light work, with occasional kneeling, crouching, crawling, and stooping. Tr. 401.  The ALJ additionally precluded Higgins from all overhead work.

At step four in the sequential proceedings, the ALJ found Higgins unable to perform his past relevant work since December 31, 2001.  Tr. 405.  The ALJ found that Higgins was a "younger individual" under the Commissioner's regulations prior to January 27, 2003, but was "closely approaching retirement age," after reaching an unspecified age[3] on that date. Tr. 405.  At step five, the ALJ found that Higgins had a high school education, was able to communicate in English, and that transferability of his job skills was not material to a determination of disability because Higgins was "not disabled" under the Commissioner's medical-vocational guidelines prior to January 27, 2003.  Tr. 406.  The also found that, prior to that date, Higgins could perform work in the national economy.  *Id.*  Finally, the ALJ found that, after January 27, 2003, Higgins was disabled under the Commissioner's regulations.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

---

[3]The record shows that Higgins was born on January 27, 1948 (Tr. 137), and thus would have turned fifty five on the date indicated by the ALJ.

(9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Higgins challenges the ALJ's credibility finding, evaluation of the medial evidence, and findings at steps four and five of the sequential proceedings.

## I.     Credibility

Higgins asserts that the ALJ failed to provide clear and convincing reasons for finding him not credible.

### A.     Credibility Standards

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036

(citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F.3d at 1284; *see* also SSR 96-7p at *3 (available at 1996 WL 374186).  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Smolen*, 80 F.3d at 1284.  After a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  *Robbins*, 466 F.3d at 883.

###### B.    Analysis

The ALJ found Higgins's statements not credible "to the extent they are inconsistent with the residual functional capacity herein."  Tr. 403.  The ALJ based this finding upon his discussion of the medical evidence and Higgins's daily activities.  *Id.*  Higgins asserts that the ALJ failed to provide sufficiently specific reasons for finding him not credible.  Pl.'s Opening Br. 18.  The Commissioner asserts that the ALJ properly considered Higgins's activities of daily living and the medical evidence.  Def.'s Br. 6-7.

### a.    RFC Assessment and Credibility

The ALJ first found Higgins not credible because his symptom testimony was inconsistent with the ALJ's RFC assessment.  Tr. 403.  The ALJ must evaluate a claimant's credibility in the course of construing his RFC assessment.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  No authority indicates that an ALJ may base his credibility analysis upon an already-completed RFC assessment.  Such an analysis is contrary to the Commissioner's regulations and is furthermore circular.  This reasoning is not sustained.

### b.    Activities of Daily Living

The ALJ found that Higgins performed unspecified household chores, watched television, visited with his neighbors, and occasionally picked up the neighbor's children from school.  Tr. 403.  An ALJ may cite a claimant's daily activities in his credibility assessment.  *Smolen*, 80 F.3d at 1284.  However, sporadic performance of minimal activities is not inconsistent with disability, *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998), and the Ninth Circuit has specifically chastised ALJ's for basing credibility findings upon a claimant's purported ability to watch television.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ may cite a claimant's activities to show that such activities are inconsistent with an allegation of total disability.  *Batson*, 359 F.3d at 1197; *see* also *Reddick*, 157 F.3d at 722.  The ALJ's present citations fail to establish this and are therefore not sustained.

### c.    Objective Medical Evidence and Credibility

The ALJ may cite a claimant's medical record in his credibility analysis, but he may not base his credibility analysis upon the medical record alone."  *Robbins*, 466 F.3d at 883.  Because the

ALJ's citation to the medical record is unaccompanied by other sustainable credibility findings, this analysis is insufficient to support a finding that Higgins is not credible.

### C.    Credibility Conclusion

In summary, the ALJ failed to offer sufficient reasons for finding Higgins not credible. The ALJ's credibility finding is not sustained.

## II.    Medical Evidence

Higgins challenges the ALJ's evaluation of numerous medical providers, including treating physicians Drs. Kendrick, Dirks, and Williams, examining physician Dr. Blaisdell, and physical therapist Karen Elton. Higgins also asserts that the ALJ improperly relied upon a reviewing physician, medical expert Dr. Gurvey.

### A.    Standards: Medical Source Opinions

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.927(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of that of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

**B.    Analysis**

The court separately addresses the opinion of each medical source challenged by Higgins.

**a.    Treating Physician Dr. Kendrick**

Neurosurgeon Dr. Kendrick treated Higgins between September 30, 1997, and April 27, 1998.  Tr. 317-25.  Dr. Kendrick and his physician's assistant completed a Social Security Administration form on April 27, 1998.  Tr. 323-25.  The form bears Dr. Kendricks name, and the signature of physician's assistant, which reads "Smith[4], P.A. for M. Kendrick, M.D."  Tr. 326.

Dr. Kendrick and Smith found that Higgins could occasionally lift or carry between ten and thirty pounds, and frequently lift a maximum of ten to twenty pounds.  Tr. 323.  They also found that he could walk one to two hours, followed by a twenty five to ninety minute break.  Tr. 323.  They based these limitations upon Higgins's low back pain and facet disease at L5-S1, and neck pain at C5,C6, and C7.  *Id.*  Dr. Kendrick and Smith also found that Higgins could sit a total of two to three hours in an eight-hour workday, and that Higgins could never climb, kneel, crouch, stoop, balance, or crawl.  Tr. 324.  Finally, they indicated that Higgins is limited in reaching, handling, pushing, and pulling, but has no limitations in feeling, seeing, hearing, or speaking.  *Id.*  Dr. Kendrick and Smith explained that their restrictions were based upon Higgins's spinal degenerative changes evidenced by decreased range of motion, delayed triceps muscle reflexes, and digital and biceps muscle weakness.  *Id.*

The ALJ described these exertional limitations.  Tr. 404.  The ALJ then stated, "at the hearing, the medical expert remarked that this evaluation was actually completed by a physician's

---

[4]Physician Assistant Smith's first initial is illegible.  Tr. 325.

assistant, who would not be considered an acceptable medical source.  I give minimal weight to this opinion for that reason . . . ."  *Id.*  The ALJ also found the April 27, 1998, opinion too "remote in time relevant to the adjudicatory period," and inconsistent with the medical record.  *Id.*

This analysis is flawed for three reasons.  First, the ALJ may not rely upon a medical expert's opinion to justify rejection of a treating or examining physician's opinion.  *Lester*,81 F.3d at 831.  The medical expert's remark does not constitute substantial evidence.  Further, the medical expert not an appropriate source to consider the legal status of a physician's assistant's opinion in disability proceedings.

Second, while a physician's assistant working on her own is not an "acceptable medical sources" under the Commissioner's regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), such a practitioner is an "other" medical source.  20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1).  "Other" sources may render opinions regarding a claimant's ability to work.  *Id.*  Further, the opinion of such a source working in conjunction with a physician in a team healthcare environment may be construed as part of the leading physician's opinion.  *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (applying such reasoning to a nurse practitioner's opinion).  Because the form clearly indicates that Physician Assistant Smith completed it for Dr. Kendricks, the ALJ was not justified in rejecting it for this reason.

Third, the ALJ found Dr. Kendrick's April 27, 1998, opinion "remote in time" relative to the "adjudicatory period."  Tr. 404.  Higgins now alleges disability beginning December 31, 2001.  Tr. 398, 740.  The ALJ must consider a claimant's complete medical record.  20 C.F.R. §§ 404.1512(a),(b),(d)(2); 416.912(a),(b),(d)(2).

For all of these reasons, the ALJ's rejection of Dr. Kendrick's opinion is not based upon the appropriate legal standards and is not sustained.

### b.    Treating Physician Dr. Dirks

Orthopedic surgeon Dr. Dirks treated Higgins between October 14, 1994, and July 15, 1998. Tr. 273, 285-303, 329.    Dr. Dirks performed a cervical discectomy and fusion at C6-C7 on November 7, 1994, and a subsequent foraminotomy at C6-C7 on February 15, 1995.    Tr. 201-03. On July 15, 1998, Dr. Dirks wrote a letter stating that Higgins was his patient, and that Higgins should "avoid repetitive movements of head, and arms, so that he does not cause persistent pain into his arms and neck."  Tr. 329.    Dr. Dirks also opined that Higgins should be allowed to "change [position] and rotate on his job every hour or so . . . ."  *Id.*

The ALJ discussed the cervical surgery Dr. Dirks performed in November 1994, and noted that Dr. Dirks took Higgins off work for one week on October 7, 1996.  Tr. 402.    The ALJ also cited unspecified post-surgical lifting restrictions, which the ALJ characterized as "temporary."  Tr. 404. The ALJ gave these restrictions "some" weight, but did not specify which limitations he accepted and which he did not.  *Id.*

Higgins now asserts that the ALJ failed to adequately reject Dr. Dirks's limitations regarding his use of his arms.  Pl.'s Opening Br. 14.    Higgins's assertion is correct.    The ALJ offered no analysis of these limitations.    The Commissioner now asserts that no "conflict" arises between Dr. Dirks's restrictions and any other medical sources.  Def.'s Br. 9.    This submission fails to address the ALJ's failure to discuss Dr. Dirk's July 15, 1998, restrictions.    The ALJ's findings omit an element of Dr. Dirks's opinion.    This court may find an ALJ's erroneous reading of the record

harmless when the error is "inconsequential to the ultimate nondisability determination." *Carmickle v. Astrue*, 533 F.3d 1155, 1162 F.3d (9th Cir. 2008)(quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)). Because the ALJ's RFC did not preclude Higgins from repetitive work, this court cannot find the ALJ's omission harmless. The ALJ's analysis of Dr. Dirk's opinion is not sustained.

### c.    Treating Physician Dr. Williams

Family practitioner and general surgeon Dr. Williams treated Higgins on two occasions in 1999. Tr. 330, 376. On October 19, 1999, Dr. Williams wrote a letter regarding Higgins's limitations, accompanied by a physical capacity questionnaire. Tr. 376-78. Dr. Williams stated that Higgins reported that he could sit a half hour at one time, and stand or walk about fifteen minutes, and may sit three to four hours and stand one to two hours throughout an eight-hour shift. Tr. 376. Dr. Williams wrote that Higgins is left handed, but can use his right hand as long as he does not lift it above shoulder level. *Id.* Repetitive left hand work "would increase" Higgins's neck pain. *Id.* Dr. Williams concluded, "at this point, he would certainly be limited to sedentary or very light work." *Id.* On the accompanying form, Dr. Williams noted these limitations and indicated that Higgins could not perform fine manipulation with his dominant left hand. Tr. 378.

The ALJ noted Dr. Williams's opinion, but rejected it because "Dr. Williams reported that he had no contact with Mr. Higgins since 1999 so there is no basis by which I could extrapolate these limitations into the adjudicatory timeframe at hand." Tr. 404. As noted above, the ALJ is required to consider all evidence before him.    20 C.F.R. §§ 404.1512(a),(b),(d)(2); 416.912(a),(b),(d)(2). For this reason the ALJ's rejection of Dr. Williams's opinion is not sustained.

### d.    Physical Therapist Karen Elton

Physical therapist Karen Elton assessed Higgins on February 27, 2001, and completed a functional capacity analysis.  Tr. 386-387B.  Elton found that Higgins could perform light work for eight hours per day, with various lifting and postural restrictions.  Tr. 386.  Elton specifically stated that Higgins "participated fully in 21 out of 21 tasks and demonstrated overexertion participation on 2 out of 21 tasks (ladder and dynamic pulling)."  *Id.*

The ALJ noted Elton's findings, and concluded, "I give little weight to Ms. Elton's opinion because the report did not reference or appear to include any measure of validity testing which would have assessed Mr. Higgins's effort or good faith participation."  Tr. 405.  The ALJ also stated, "As the test was performed specifically for the purpose of disability determination and Mr. Higgins knew this, such validity measures are essential and the results are less reliable as a consequence of this omission."  *Id.*

Physical therapists, like physician's assistants, are "other" medical sources under the Commissioner's regulations.  20 C.F.R. §§ 404.1513(d); 416.913(d).  Such sources may show how a claimant is limited in performing work activities.  *Id.*  While the ALJ may reject medical source opinions that are "brief, conclusory and inadequately supported" by clinical notes or findings, *Bayliss*, 427 F.3d at 1216, the ALJ did not make such a finding here.  The ALJ instead stated that Elton should have included additional unspecified "validity testing."  Elton's opinion is predicated by a statement that Higgins "participated fully" and demonstrated overexertion on two assigned tasks. Tr. 386.

This court cannot determine what "validity testing" the ALJ purportedly required. Elton's testing included her assessment that Higgins participated and demonstrated overexertion. The extent to which Higgins's test results are based upon insufficient effort essentially turns upon Higgins's credibility. Had the ALJ properly found Higgins not credible, the ALJ could have rejected Elton's opinion to the extent that she relied upon Higgins's volitional efforts. *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002). However, the ALJ presently made no such finding. This court cannot determine what, if any, validity testing constitutes standard physical therapy evaluation protocol. Further, the ALJ's conclusion here infers that Higgins is not credible, and the ALJ failed to properly discredit Higgins, as discussed above. For these reasons, the court declines to affirm the ALJ's rejection of Elton's assessment.

### e.    Examining Physician Dr. Blaisdell

Higgins asserts that the ALJ erroneously failed to discuss the opinion of examining physician Dr. Blaisdell. Pl.'s Opening Br. 12.

Orthopedic surgeon Dr. Blaisdell evaluated Higgins on October 6, 1995. Tr. 248-54. Dr. Blaisdell diagnosed muscle strain and postoperative changes of the spine (Tr. 251), and stated that Higgins could continuously lift up to five pounds, frequently lift between six and twenty pounds, occasionally lift between eleven and forty pounds, and never lift more than fifty-one pounds. Tr. 253. Dr. Blaisdell indicated that Higgins had "poor" ability to use his left hand for repetitive action. *Id.*

The ALJ did not discuss Dr. Blaisdell's opinion. The Commissioner now contends that Dr. Blaisdell's opinion is irrelevant because Higgins did not assert disability in 1995. Def.'s Br. 9. As

noted, the ALJ must consider all evidence before him.    20 C.F.R. §§ 404.1512(a),(b),(d)(2); 416.912(a),(b),(d)(2).  Under this standard, the ALJ inappropriately omitted Dr. Blaisdell's opinion. This omission is not sustained.

### f.    Medical Expert and Reviewing Physician Dr. Gurvey

Higgins also asserts that the ALJ erroneously relied upon medical expert and reviewing physician Mark Gurvey, M.D.    Pl.'s Opening Br. 17.

Medical expert and orthopedic surgeon Dr. Gurvey testified at Higgins's June 17, 2009, hearing before an ALJ.  Tr. 740-762.  Dr. Gurvey testified that Higgins did not meet a listing at step three in the sequential proceedings, and stated:

> I believe the functional capacity assessment would be that he could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds.  He could sit, stand, and walk six out of eight hours with the usual breaks.  There would be no restrictions with regard to push/pull. Posturally he should not climb ladders, scaffolds, or ropes.  He could occasionally crawl.    There would be no manipulative[,] environmental[,] audio, visual, or communicative limitations. Tr. 742-43.

Dr. Gurvy did not explain how he arrived at this assessment.  *Id.*  Dr. Gurvey stated, also without explanation, that he "allowed" Higgins to meet a listed disorder following his cervical surgery, for six months between October 1994 and August 1995.  Tr. 744-45.  Dr. Gurvey testified that he, Dr. Gurvey, rejected Dr. Williams's October 19, 1999, opinion because it was based upon Higgins's reports to Dr. Williams.  Tr. 745.  Finally, Dr. Gurvey testified that he rejected a physical therapist's opinion because it was not proffered by a physician, despite the ALJ's instruction that disability proceedings must consider such sources.  Tr. 745-46.

The ALJ relied upon Dr. Gurvey's opinion to reject the opinions of Drs. Kendrick and Williams, as well as physical therapist Karen Elton.  Tr. 405.  The ALJ gave "significant weight" to Dr. Gurvey's opinion "because it encompassed a review of the entire record which was not afforded to all treating sources."  Tr. 405.

Dr. Gurvey's testimony misconstrues the role of a medical expert.  The medical expert may offer testimony regarding the claimant's record, but no authority allows the medical expert to make decisions "accepting" or "rejecting" the opinions of treating or examining medical sources on behalf of the Commissioner.  Further, the medical expert is not empowered to assess the claimant's RFC; this is a decision reserved for the Commissioner.  20 C.F.R. §§ 404.404.1527(e)(1); 416.927(e)(1).  The ALJ was erroneous in relying upon Dr. Gurvey's opinion to the extent Dr. Gurvey purported to make a disability determination.

The ALJ also provided no rationale for selecting Dr. Gurvey's opinion over that of Drs. Kendrick and Williams, and physical therapist Elton.  The ALJ stated that Dr. Gurvey found their opinions "outside the relevant time frame" and "inconsistent with the objective medical evidence of record."  Tr. 405.  However, the ALJ did not identify evidence supporting his reliance upon Dr. Gurvey's opinion.  The ALJ may not rely upon a reviewing medical expert's opinion alone to reject the properly supported opinions of treating physicians.  *Lester*, 81 F.3d at 831.  This reasoning is therefore not sustained.  The ALJ's analysis of Dr. Gurvey's testimony is not affirmed.

17 - OPINION AND ORDER

C.    **Conclusion: Medical Source Statements**

In summary, the ALJ failed to properly evaluate the opinions of treating physicians Drs. Kendrick, Dirks, Williams.  The ALJ also erroneously relied upon medical expert Dr. Gurvey.  The ramifications of these errors are discussed below.

III.    **Step Five Findings**

Finally, Higgins asserts that the ALJ should have found him disabled at step five in the sequential proceedings.  Pl.'s Opening Br., 19-20.  Higgins asserts that the ALJ should have found him disabled under the Commissioner's medical-vocational guidelines, and also asserts that the ALJ's questions to the vocational expert failed to include all properly supported limitations stemming from the medical evidence and his own testimony.  Pl.'s Opening Br. 19.

A.    **Medical-Vocational Guidelines**

Higgins asserts that he is disabled under the Commissioner's medical-vocational guidelines. Pl.'s Opening Br. 20.  Higgins specifically contends that he is disabled under 20 C.F.R. § 404, Subpart P, App. 2, Rule 201.14.  *Id.*  This rule directs a finding of disability when a claimant (1) reaches age 50, (2) has a high school education or more, (3) has unskilled or no work experience, and (4) is limited to sedentary work.   20 C.F.R. § 404, Subpart P, App. 2, Rule 201.14.

Higgins was born January 27, 1948 (Tr. 398), and was age 53 on his December 31, 2001, alleged onset date.   He has a high school education (Tr. 163), and the vocational expert at his April 4, 2001, hearing testified that his work experience in wood product manufacturing amounted to unskilled work.  Tr. 96.  Higgins thus meets the first three elements required by 20 C.F.R. § 404, Subpart P, App. 2, Rule 201.14.

However, Higgins fails to explain the manner in which crediting the testimony of Drs. Kendrick, Dirks, Williams, Blaisdell, and physical therapist Elton establishes that he is limited to sedentary work. A claimant is limited to sedentary work when he can lift no more than ten pounds at a time. 20 C.F.R. §§ 404.1567; 416.967. This court's review of the record finds that none of these sources stated that Higgins is limited to lifting ten pounds only. The record instead shows that physical therapist Karen Elton stated that Higgins could, in fact, perform light work. Tr. 386. Dr. Kendrick stated that Higgins could lift a maximum of twenty pounds. Tr. 323. Dr. Blaisdell stated that Higgins could frequently lift up to twenty pounds, and occasionally lift up to forty pounds. Tr. 253. Higgins's submission regarding the Commissioner's medical-vocational guidelines is therefore unsupported by the record.

### B.    Vocational Expert's Testimony

At step five in the sequential proceedings, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 416.960(b)(2); 416.966(e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

The ALJ erred in his assessment of Higgins's testimony and the medical evidence in construing his RFC, as described above. The ALJ's hypothetical questions to the vocational expert were therefore insufficient. The effects of the ALJ's error at step five pertaining to the improperly omitted testimony is assessed below.

**IV.    Remand**

    **A.    Legal Standards**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir 2000)(*cert. denied*, 531 U.S. 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011)(quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.*

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (citing *Bunnell* v. Sullivan, 947 F.2d 341, 348 (9th Cir. 1991)).

**B.      Analysis**

The ALJ failed to properly assess Higgins's testimony and the opinions of Drs. Kendrick,

Dirks, and Williams, as well physical therapist Karen Elton.  The ALJ's subsequent RFC

assessment is therefore not based upon the proper legal standards.  The first prong under the

credit-as-true analysis is met.

In determining whether to award benefits or remand the matter for further proceedings the

court must determine whether "outstanding issues remain in the record" under the second prong.

*Strauss*, 635 F.3d at 1138.  The record before this court totals 800 pages, encompassing four

hearings before an administrative law judge over a ten-year period.  Further, the court twice

ordered the Commissioner to supply the hearing transcripts in their entirety.  Neither party now

asserts the record requires further development.  The second prong is therefore met.

Thus, the issue is whether crediting the improperly omitted evidence establishes that

Higgins is disabled under the third prong of the credit-as-true analysis.  This determination is

based upon the combined effect of the testimony discussed below.

**a.      Higgins's Testimony**

Higgins elected to postpone his January 15, 1999, hearing and did not testify regarding

his limitations.  Tr. 47-53.  At his August 6, 1999, hearing Higgins testified that he continued to

have hand pain following his cervical fusion surgery in 1995, and that this pain occurred

regularly, especially when driving.  Tr. 60.  Higgins stated that he could not lift overhead, reach

out, or reach sideways due to shoulder bursitis.  Tr. 63.  He also said he had difficulty "picking

things up" (*id.*), especially with his left hand.  Tr. 65.  Finally, he stated that he had leg and hip

pain associated with sitting, and could not sit longer than forty-five minutes.  Tr. 66-68.

At his April 4, 2001, hearing, Higgins testified that the fingers on his dominant left hand

cramp and "go numb."  Tr. 89-90.  He also stated that he has good days and bad days, and that

physical capacity testing did not reflect his limitations on bad days.  Tr. 91.  Higgins testified that

he has headaches from twisting his neck, and that he does not take Tylenol because "pills ain't

good for you."  Tr. 94.

Finally, at his September 15, 2005, hearing Higgins testified that his hip hurt continually

(Tr. 789), that he still experienced carpal tunnel syndrome symptoms, and he did not have feeling

in three of his fingers.  Tr. 785.  Higgins did not specify which hand is without this feeling.  *Id.*

Following his neck surgery, Higgins loses his grip and his fingers cramp on his left hand.  Tr.

788.  Higgins also stated that he has neck pain when he looks up, and that he was advised by

physicians not to bend, stoop, twist, "and stuff like that."  *Id.*  Finally, he said that he has a hard

time picking up small items such as nuts and bolts, and could not type.  Tr. 789.

Higgins did not testify at his June 17, 2009, hearing.  Tr. 737-775.

### b.    Medical Source Statement Testimony

As noted above, Dr. Kendrick stated that Higgins could frequently lift a maximum of ten

to twenty pounds, and could walk for one to two hours, followed by a break.  Tr. 323.  Dr. Dirks

stated that Higgins should avoid repetitive movements with his head and arms, and change

positions every hour.  Tr. 329.  Dr. Williams stated that Higgins could sit a half hour without a

break, for a total of three to four hours in an eight-hour shift, and that Higgins should not perform

repetitive left-hand work or raise his right hand above shoulder level.   Tr. 378.  Physical

therapist Karen Elton stated that Higgins can perform light work (Tr. 386), and examining

physician stated Dr. Blaisdell stated that Higgins may lift up to twenty pounds frequently.  Tr.

253.

### c.    Vocational Expert's Testimony

A vocational expert testified at Higgins's April 4, 2001, hearing (Tr. 76- 112), at his

September 15, 2005, hearing (Tr. 792-800), and at his June 17, 2009, hearing.  Tr. 763-775.

At Higgins's first hearing, on April 4, 2001, the ALJ did not ask the vocational expert

hypothetical questions, but presented the vocational expert with a form indicating that Higgins

could perform modified light work.  Tr. 99-100.  The modifying limitations are not in the hearing

transcript.  The vocational expert stated that, including the unidentified limitations presented on

the form before him, Higgins could perform work in the national economy.  Tr.  100-01.

Because these limitations are not in the hearing transcript before this court, this court cannot now

review the effect of this testimony.

The vocational expert also testified at Higgins's September 15, 2005, hearing.  The ALJ

asked the vocational expert to consider an individual limited to light work, with limited ability to

change positions, no overhead work, and no repetitive bending, lifting, squatting, or crouching.

Tr. 793.  The vocational expert stated that such an individual could perform work in the national

economy.  Tr. 794-95.

Higgins's counsel asked the vocational expert to consider the effect of an individual with

limited manual dexterity upon this finding.  Tr. 796.  Higgins's counsel did not explain specific

limitations associated with "rudimentary manual dexterity," and the vocational expert

prevaricated regarding the effect of such limitations, saying she "couldn't even hazard a guess"

about the effect of such a limitation upon the number of jobs she previously identified in the

national economy.  Tr. 796.  Higgins's counsel did not ask the vocational expert further questions

regarding Higgins's alleged limitations.  Tr. 799.

Finally, at Higgins's June 17, 2009, hearing the ALJ asked the vocational expert to

consider an individual limited to lifting twenty pounds occasionally and ten pounds frequently,

with no climbing, and occasional kneeling, crouching, crawling, and stooping.  Tr. 764.  The ALJ

also asked the vocational expert to consider an individual that can sit, stand, and walk six hours

in an eight-hour day.  Tr. 764-65.  The vocational expert stated that such an individual could

perform work in the national economy.  Tr. 766.

The ALJ then limited this hypothetical individual to "frequent but not constant" use of his

dominant left hand.  Tr. 766.  The vocational expert voluminous that such an individual could

perform work as a security guard, or as a concert-hall or theater usher.  Tr. 766-67.

Neither the ALJ nor Higgins's counsel elicited testimony from the vocational expert

addressing all of Higgins's purported limitations which the ALJ improperly assessed.  Questions

to the vocational expert did not address the limitations Higgins described regarding his left-hand

grip, inability to sit more than forty-five minutes, or inability to twist his neck.  Nor was

testimony elicited regarding Dr. Kendrick's assessment that Higgins should lift no more than

twenty pounds, and walk less than one or two hours in an eight hour shift.  Vocational expert

testimony also did not address Dr. Williams's finding that Higgins could sit less than one-half

24 - OPINION AND ORDER

hour.  Finally, vocational expert testimony did not address Dr. Blaisdell's opinion that Higgins could lift no more than twenty pounds.

This court will not attempt to construe the effects of these omitted limitations.  They are voluminous and internally contradictory.  In such circumstances, the appropriate remedy is to remand the matter for vocational expert testimony.  *Harman*, 211 F.3d at 1180.  The matter must be remanded for further proceedings addressing the improperly evaluated evidence discussed above.  *Id.*

This court therefore declines to credit the improperly assessed testimony of Higgins and the numerous medical source providers discussed at length above.  Upon remand, the ALJ must properly assess Higgins's testimony and the opinions of Drs. Kendrick, Dirks, Williams, physical therapist Karen Elton, examining physician Dr. Blaisdell, and medical expert Dr. Gurvey.  If necessary, the ALJ must then revise his RFC analysis and apply the correct medical-vocational guideline or obtain vocational expert testimony regarding Higgins's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

///

///

///

25 - OPINION AND ORDER

## **ORDER**

The ALJ's decision is not based upon the appropriate legal standards or substantial evidence.  For the reasons above, this court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this ___31ST___ day of May, 2011.

_/s/ Garr M. King_____
Garr M. King
United States District Judge